# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00600-COA

| | |
|---|---|
| **HANNAH RUSH DALY** | **APPELLANT** |

**v.**

| | |
|---|---|
| **RICHARD ALLEN RAINES** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2022 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JEFFREY BIRL RIMES |
| | SARAH LINDSEY HAMMONS |
| ATTORNEYS FOR APPELLEE: | MATTHEW THOMPSON |
| | CHAD KENNETH KING |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 10/31/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On February 28, 2022, the Chancery Court of Madison County, Mississippi entered a "Final Judgment of Modification and Contempt" that granted Richard Raines "sole physical and legal custody" of his and Hannah Daly's minor child, A.L.R.[1] Hannah alleges on appeal that the chancery court lacked subject matter jurisdiction to modify the existing Mississippi custody decree. Alternatively, Hannah claims that she was "deprived due process by the [c]hancellor's limitation on [her] ability to discover and put on evidence in her defense" at

---

[1] Initials are used to protect the identity of the minor child.

trial. Finally, Hannah claims that the chancery court erred in modifying custody and granting Richard sole physical and legal custody of A.L.R.

## FACTS AND PROCEDURAL HISTORY

¶2. A.L.R. was born to Hannah and Richard in 2014. They were not married. A.L.R. was born in Mississippi and continued to live in Mississippi with Hannah after her birth. On October 1, 2015, the Madison County Chancery Court entered a final judgment of filiation that established Richard as A.L.R.'s father and awarded Hannah physical custody of A.L.R. subject to Richard's visitation. The parties filed multiple motions and petitions between 2017 and 2018 regarding clarification of the court's previous judgment of filiation and the specific parameters of Richard's visitation. On June 18, 2018, the chancery court entered an "Agreed Final Judgment" modifying certain aspects of custodial periods and visitation provisions. However, physical custody of A.L.R. remained with Hannah.

¶3. On May 6, 2019, Richard filed an "Emergency Petition for Custody and Petition for Modification of Custody, Support, Visitation, Contempt, and for Other Relief" in the chancery court. In his petition, Richard represented that he was currently living in Maryland and that Hannah was living in Florida. Richard also represented that A.L.R. was living in Mississippi with her maternal grandparents at the time his emergency petition was filed. Richard alleged that Hannah had been arrested in Mississippi and Louisiana for domestic violence and most recently had been arrested in Florida for felony battery. Richard also asserted that Hannah had been diagnosed with a mental health condition necessitating inpatient treatment. Because of these allegations and other circumstances, Richard claimed

2

that A.L.R. would suffer immediate and irreparable harm if she remained in Hannah's custody. In his petition, Richard requested an immediate modification of custody and also requested that the chancellor appoint a guardian ad litem (GAL) to investigate the allegations. Pursuant to an emergency order dated May 8, 2019, the chancellor granted emergency custody of A.L.R. to Richard. On May 10, 2019, an "Agreed Order Appointing Guardian Ad Litem" was entered, and Attorney Cynthia Howell was appointed "as an arm of the court, to investigate, find facts, and make independent reports and send recommendations to the Court as to what would be in the best interest of the minor child, and not as the minor child's lawyer." A subsequent order was entered on July 16, 2019, that awarded sole legal and physical custody of A.L.R. to Richard and granted supervised visitation to Hannah.

¶4. Hannah made multiple filings between the time the July custody order was entered and the end of 2019, including an objection to the family master's report, a motion to dissolve the emergency orders, and a motion to disqualify the GAL. On December 12, 2019, the chancery court entered three separate orders denying each of Hannah's motions. Hannah continued to file numerous pleadings leading up to and after the first day of trial. Specific to this appeal, Hannah filed a return on a subpoena duces tecum on January 7, 2021. The subpoena commanded the GAL to produce "[a]ll medical, therapy, counseling, and school records in your possession pertaining to the minor child, A.L.R., including all correspondence between you and the minor child's medical providers, therapists, counselors, and teachers." The GAL filed a motion to quash the subpoena on January 14, 2021. The

chancery court entered an order granting the GAL's motion to quash on March 9, 2021, and stated in part:

> The Court finds that counsel for [Hannah] failed to identify binding precedent and authority establishing a party's right to subpoena documents from the Guardian Ad Litem; therefore the Guardian ad Litem's Objection to Subpoena Duces Tecum, Motion to Quash, and Motion for Protection Order [MEC#120] is hereby granted.

Hannah also filed a return on a deposition subpoena on April 28, 2021. The subpoena sought to depose the GAL after the trial had begun. On June 4, 2021, the chancery court granted the GAL's request to quash the deposition subpoena as well.

¶5. Trial began on Richard's petition for modification of custody, support, visitation, contempt, and other relief on March 3, 2021, and continued on August 2-3, 2021. On the second day of trial, Hannah's attorney attempted to call A.L.R. as his first witness. After hearing objections and arguments from both Richard's counsel and the GAL, the chancellor stated:

> I have now heard the objection, the response and the guardian ad litem's argument or presentation in regard to the objection. This child is a seven-year-old child, [who] would be called upon to answer questions in regard to individualized time in the presence of each of the respective parents. The Court finds that the basis of the questioning would not pose a vital point in regard to this Court's decision and does hereby grant the objection to the seven-year-old testifying even in camera.

¶6. On February 28, 2022, the chancery court entered a final judgment of modification and contempt as well as a separate opinion detailing the court's judgment. The judgment stated in part "that a material change in circumstances that is adverse to the minor child has occurred since the prior order and it is in the child's best interest for the Plaintiff, [Richard],

to have sole physical and legal custody of their child, A.L.R., born in the year 2014."
Aggrieved by the ruling of the chancery court concerning discovery limitations and modification of custody, and claiming that the chancery court lacked jurisdiction, Hannah timely appealed.

## STANDARD OF REVIEW

¶7.     "Whether a court had jurisdiction under the UCCJEA[2] to hear a child-custody dispute is a question of law, which we review de novo." *Miller v. Mills*, 64 So. 3d 1023, 1026 (¶11) (Miss. Ct. App. 2011). "However, the factual findings underpinning the jurisdiction question are reviewed under the familiar substantial evidence and abuse of discretion standard." *Clifton v. Shannon*, 93 So. 3d 70, 72 (¶7) (Miss. Ct. App. 2012). "This Court employs a limited standard of review in child-custody cases and will 'affirm findings of fact by chancellors . . . when they are supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016) (quoting *Borden v. Borden*, 167 So. 3d 238, 241 (¶4) (Miss. 2014)). "This Court may reverse a chancellor's finding of fact only when there is no 'substantial credible evidence in the record' to justify his finding." *Hensarling v. Hensarling*, 824 So. 2d 583, 586 (¶7) (Miss. 2002) (quoting *Henderson v. Henderson*, 757 So. 2d 285, 289 (¶19) (Miss. 2000)).

## ANALYSIS

---

2 The Uniform Child Custody Jurisdiction and Enforcement Act is codified in Mississippi Code Annotated sections 93-27-101 to -402 (Rev. 2021).

**I.     Did the Chancery Court of Madison County, Mississippi err in exercising subject matter jurisdiction over the case at hand?**

¶8.     Hannah alleges that the chancery court lacked subject matter jurisdiction over the case at hand.  Hannah argues that because she lived in Florida and Richard lived in Maryland, Mississippi was not the proper state to make a determination regarding the modification of the existing child custody order.

¶9.     Mississippi Code Annotated section 93-27-202 states:

> (1) Except as otherwise provided in Section 93-27-204, a court of **this state which has made a child custody determination** consistent with Sections 93-27-201 or 93-27-203 **has exclusive, continuing jurisdiction** over the determination until:
>
>> (a) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>>
>> (b) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent currently do not reside in this state.
>
> (2) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 93-27-201.

(Emphasis added).   In this case, jurisdiction was established in the Chancery Court of Madison County, Mississippi, pursuant to an order of filiation dated October 1, 2015.  An additional **agreed** final judgment signed by both parties regarding custody and visitation was entered on June 18, 2018.  There is no evidence that jurisdiction was contested during any

stage of litigation resulting in either custody order. Pursuant to Mississippi Code Annotated section 93-27-202, Mississippi has exclusive and continuing jurisdiction in this case and may lose jurisdiction **only** if one of the conditions within this statute is met.

¶10. The record reflects that A.L.R. was born in Mississippi and lived in Mississippi until August 2018 when Hannah moved to Santa Rosa Beach, Florida. Between 2018 and 2022, Hannah claimed several different addresses in Florida and Maryland. However, at the emergency petition hearing on May 7, 2019, Hannah testified, "I don't think [A.L.R.] should start school and live there permanently in Maryland. She has a life established here. Granted, I did move to Destin . . . other than that, her life has been here [in Mississippi]." The record also reflects that on April 30, 2019, prior to Richard's petition for emergency relief, modification, and contempt, Hannah's father traveled to Florida to pick up A.L.R., and he brought her back to Mississippi, where she remained until Richard's emergency petition was filed and heard.

¶11. The Madison County Chancery Court never made a determination that it lost jurisdiction pursuant to Mississippi Code Annotated section 93-27-202. In fact, in her final judgment dated February 28, 2022, the chancellor stated, "After finding jurisdiction over the parties and this cause and finding that venue is proper, the Court grants a modification of custody, visitation, and child support, and grants in part Plaintiff's request for contempt." At no point during the three years that this matter was pending in Madison County, Mississippi, did Hannah file any pleadings concerning the minor child in any court of any other state or jurisdiction. Nor did Hannah seek to enroll the Mississippi judgment in any

other jurisdiction. Further, she did not file any pleadings requesting a UCCJEA hearing to determine the most convenient forum for the case or if Mississippi should or would relinquish jurisdiction. Instead, Hannah proceeded to actively participate in litigation in the Chancery Court of Madison County, Mississippi, seeking relief on her own behalf and failing to challenge the chancery court's jurisdiction. We find no error by the chancery court in exercising jurisdiction over the case at hand.

## II. Did the chancery court deprive Hannah of due process by limiting her ability to discover and present evidence in her defense?

¶12. Hannah claims that "reversal is further warranted because of the prejudice [she] suffered when she was hamstrung in her ability to discover and put on evidence in her defense against [Richard's] petition." First, Hannah alleges that the chancellor erred by denying her the ability to discover certain documents from the GAL through a subpoena duces tecum. Secondly, Hannah alleges that the chancellor erred when she denied Hannah's request to allow the minor child to testify at trial.

### A. Did the chancery court err in denying Hannah's ability to discover certain documents from the GAL through a subpoena duces tecum?

¶13. Hannah asserts that the court erred in granting the GAL's motion to quash her subpoena duces tecum and claims that the GAL should have been required to provide Hannah with the documents she requested. Hannah issued a subpoena duces tecum on December 17, 2020, that requested the GAL to produce "[a]ll medical, therapy, counseling, and school records in your possession pertaining to the minor child, A.L.R. including all

correspondence between you and the minor child's medical providers, therapists, counselors, and teachers."

¶14. Rule 26(b)(1), (3) of the Mississippi Rules of Civil Procedure[3] states in part:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General*. Parties may obtain discovery regarding any matter, not privileged, which is **relevant to the issues raised by the claims or defenses of any party**. The discovery may include the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things; and the identity and location of persons (i) having knowledge of any discoverable matter or (ii) who may be called as witnesses at the trial. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
> . . . .
> (3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including that party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of that party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Notwithstanding any exceptions provided for in the Rules, it is clear that A.L.R.'s medical, therapy, counseling, and school records in the GAL's possession and the correspondence between the GAL and the minor child's medical providers, therapists, counselors, and

---

[3] According to Mississippi Rule of Civil Procedure 1, "[t]hese rules govern procedure in the circuit courts, **chancery courts**, and county courts in all suits of a civil nature, whether cognizable as cases at law or in equity . . . ." (Emphasis added).

teachers falls within the parameters of discoverable material set forth in Rule 26. The documents that Hannah requested fit squarely in the category of documents relevant in a child custody modification case. Further, the documents undoubtedly assisted the GAL in formulating her custody recommendation for the court. The only question that remains is whether the requested documents fall within one of the exceptions provided for in the Rules.

¶15.    Rule 45(d)(1)(A) of the Mississippi Rules of Civil Procedure states:

> On timely motion, the court from which a subpoena was issued shall quash or modify the subpoena **if** it (i) fails to allow reasonable time for compliance; (ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, (iii) designates an improper place for examination, or (iv) subjects a person to undue burden or expense.

(Emphasis added). In its order granting the GAL's motion to quash, the chancery court held:

> The Court finds that counsel for [Hannah] failed to identify binding precedent and authority establishing a party's right to subpoena documents from the Guardian Ad Litem; therefore, the *Guardian ad Litem's Objection to Subpoena Duces Tecum, Motion to Quash, and Motion for Protection Order* [MEC # 120] is hereby granted.

The chancery court's order did not list any one of the four reasons set forth in Rule 45 for quashing the subpoena duces tecum but, rather, held that Hannah failed to provide the court with authority establishing her right to subpoena the GAL. As discussed in the paragraphs above, Rule 26 of the Mississippi Rules of Civil Procedure is the authority that allows Hannah to obtain information through discovery and, more specifically, a subpoena duces tecum in the case at hand. In *Flechas v. Pitts*, 138 So. 3d 907, 911 (¶9) (Miss. 2014), the Mississippi Supreme Court held that the "chancery court was required to find whether the subpoena at issue sought irrelevant or privileged information under the same standards as set

forth in Rule 26(b) and other discovery rules." Because the chancery court failed to list one of the reasons prescribed by Rule 45 in its order granting the GAL's motion to quash, we reverse and remand the chancellor's ruling to quash the subpoena duces tecum.

### B. Did the chancery court err in denying Hannah's request to allow the minor child to testify at trial?

¶16. Hannah argues that A.L.R. should have been able to testify at trial. She claims that the chancellor violated binding Mississippi Supreme Court precedent by failing to take the necessary steps before refusing the testimony. Hannah bases her argument on *Jethrow v. Jethrow*, 571 So. 2d 270, 274 (Miss. 1990). In *Jethrow*, the Mississippi Supreme Court held:

> We conclude that there can be no *per se* prohibition against a child witness testifying in a divorce case between his parents. The right of every litigant to compulsory process for witnesses and have them testify under oath in court is so well grounded that any *per se* exclusion simply because he or she is a child of the divorcing parents risks offending the due process provisions of Amendments V and XIV of the U.S. Constitution, and Art. 3, Sec. 14 of the Mississippi Constitution. . . .
>
> We agree that there is a certain amount of discretion vested in the trial court, in conducting proceedings of this type. The court should not, however, reject outright proposed testimony of a child in custody proceedings, where the omission of such crucial testimony might be harmful to the child's best interests. The trial court should take great pains under such conditions at least to conduct an *in camera* conference with the child to determine the competency of the child, as well as the competency of any evidence which the child might present. The court should also then determine whether the best interests of the child would be served by permitting her to testify or be sheltered from testifying and being subjected to a vigorous cross-examination. A report of the essential material matters developed at the *in camera* conference should be made of record by the trial court and the court should state the reasons for allowing or disallowing the testimony of the child, and also note the factual information which the court developed from the conference with the child which would be considered by the court in its ultimate determinations in the case. . . .

Generally, the testimony of a child called as a witness in a divorce case should not be excluded for reasons other than competency or evidentiary defects or for the protection of the child.

*Id*. at 273-74 (quoting *Crownover v. Crownover*, 337 N.E. 2d 56, 59 (Ill. App. Ct. 1975)).

¶17.    More recently, in *Denham v. Denham*, 351 So. 3d 954, 961 (¶9) (Miss. 2022), the supreme court held:

> The clear legal standard is that the chancellor must interview a child of tender years in order to determine both competency and the child's best interests. The chancellor's determination that the children were incompetent to testify and that testifying was not in their best interest *before* interviewing them clearly contravened this Court's mandates in *Jethrow*; thus, the chancellor applied an erroneous legal standard in coming to her determination. Furthermore, the refusal to record the in-chambers interviews with the children by use of a court reporter clearly contravened this Court's mandate in *Robison* [*v. Lanford*, 841 So. 2d 1119 (Miss. 2003)], further compounding the chancellor's application of erroneous legal standards and depriving this Court of a complete appellate record.[4]

¶18.    In the case at hand, Hannah's counsel argued both at trial and through her post-trial motion that the chancellor was required, at the very least, to conduct an in camera conference with the child to make a determination as to her competency and whether it was in her best interest to testify. After hearing arguments from counsel and the GAL regarding A.L.R. testifying at trial, the chancellor stated, "Well I heard the testimony. It's not happening now." The chancellor failed to conduct an in camera conference with the minor child or hear from the child at all to determine her competency to testify at trial or the substance and reliability of her potential testimony. We agree with Hannah that the chancellor erred in failing to comply with the procedure set forth in *Jethrow* and *Denham*. Therefore, the

---

⁴ Notably, *Denham v. Denham*, 351 So. 3d 954 (Miss. 2022), was published after the chancellor made her ruling.

chancellor's denial of Hannah's request to allow A.L.R. to testify at trial is reversed and remanded.

## CONCLUSION

¶19.    Based upon the above analysis and findings, the chancery court's judgment is affirmed as to the jurisdiction of the chancery court as discussed in Part I of this opinion. However, the chancery court's final judgment of modification and contempt is reversed, and the matter is remanded for further proceedings consistent with Part II of our opinion.

¶20.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**