<hr/>

*In re* A.M.C. III, a Minor (The People of the State of Illinois, Petitioner-Appellee v. A.M.C. III, Respondent-Appellant).

Second District No. 2—85—1061

Opinion filed November 3, 1986.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

A.M.C., the minor respondent, was charged as a delinquent minor (Ill. Rev. Stat. 1985, ch. 37, par. 702—2) with four counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(2)(i)). At an adjudicatory hearing, the trial court directed a verdict for respondent as to one of the counts, but adjudged him a delinquent minor based on the remaining three counts. Respondent was placed on 24 months' probation and 16 days' secured detention. He appeals, claiming that the trial court erred in (1) finding the five-year-old complaining witness competent to testify and (2) in permitting the complaining witness' mother to testify to details of the complaint which were made to her after the incident.

The State filed a petition for adjudication of wardship based on a sexual assault described as acts of penetration of the complaining witness by (1) placing his penis in her vagina and mouth; (2) placing his tongue in her mouth; and (3) placing his finger in her vagina. The court directed a finding for respondent on the act of placing his tongue in her mouth. Initially, the court found that the complaining witness (S.S.), who had turned five years old a month before the hearing, was competent to testify. The following day, S.S. testified about the details of the alleged incident.

S.S. stated that "[respondent] took me down in the basement and humped me." She stated that respondent pulled her downstairs and took off her clothes. He then took off his own clothes and lay on top of her. Using anatomically correct dolls to demonstrate, she indicated that respondent "put it up in my stuff," placing the penis of the male doll in the vagina of the female doll. She said that respondent also put his tongue in her mouth and "his stuff" in her mouth and in her "butt." She also indicated that he put his fingers in her vagina.

On cross-examination, she stated that she had previously been shown the dolls by Chris Bellios, a victims' assistant, and by the prosecutor. They had shown her what respondent did to her a total of six times. Both the witness' sister, LaSandra, and her mother had told her to say that respondent had put his "stuff" in her "stuff."

The victim's mother testified that she took her three daughters to their baby-sitter's home on the morning of July 2 and then went to work. She got home from work very late that night and so did not see the children until the following evening. At that time, based on a previous talk with the baby-sitter, she asked the victim what had happened between her and respondent. Over objection, she said that the victim said that respondent took her into the basement, took off her clothes and hurt her. The victim said that respondent put his "thing"

in her mouth, licked her and "was feeling on" her.

Other witnesses included the baby-sitter, a police officer who had questioned respondent regarding the incident, and the nurse and emergency-room physician who had examined the victim after the incident. Respondent also testified in his own behalf.

At the close of all the evidence, the trial court granted a directed finding on one of the four counts. It found that the other three counts had been proved beyond a reasonable doubt and declared the respondent a delinquent minor and a ward of the court.

■■ ■ Respondent's first issue is whether the trial court erred in finding five-year-old S.S. competent to testify. The question of a witness' competency is for the trial court, and the reviewing court will not disturb such a ruling unless the trial court abused its discretion or misapprehended some legal principle. (*People v. Epps* (1986), 143 Ill. App. 3d 636, 639, 493 N.E.2d 378; *People v. Mangiaracina* (1981), 98 Ill. App. 3d 606, 610, 424 N.E.2d 860.) The controlling factor in determining a child's competency is the degree of his or her intelligence, not chronological age. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141; *People v. Epps* (1986), 143 Ill. App. 3d 636, 639, 493 N.E.2d 378, 380.) A child is competent to testify if he or she is sufficiently mature to receive correct impressions from his or her senses, to recollect and narrate those impressions intelligently, and to appreciate the moral duty to tell the truth. *People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10; *People v. McNichols* (1986), 139 Ill. App. 3d 947, 951, 487 N.E.2d 1252.

Respondent relies heavily on *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485, where spontaneous statements by a three-year-old witness to the crime were held incompetent when testified to by adults who heard them. The court stated, "[U]nder the age of six presumption of incompetency would arise, and at the age of five the utmost limit would be ordinarily reached, unless extraordinary development of the mental and religious faculties should be shown ***." (401 Ill. 2d 68, 78, 81 N.E.2d 485.) The recent trend, however, has been toward an extremely broad standard of competency, and recent cases have regularly upheld trial courts' decisions permitting very young children to testify. See, *e.g., People v. Bridgeforth* (1972), 51 Ill. 2d 52, 56-57, 281 N.E.2d 617, 620; *People v. Tappin* (1963), 28 Ill. 2d 95, 97, 190 N.E.2d 806 (5½-year-old found competent); *In re E.S.* (1986), 145 Ill. App. 3d 906, 910, 495 N.E.2d 1334; *People v. Epps* (1986), 143 Ill. App. 3d 636, 639, 493 N.E.2d 378 (six-year-old found competent); *People v. McNichols* (1986), 139 Ill. App. 3d 947, 952-53, 487 N.E.2d 1252

(witness was four at time of offense and five at time of trial); *People v. Brown* (1980), 91 Ill. App. 3d 163, 165, 414 N.E.2d 249 (seven-year-old).

■ Respondent points to numerous inconsistencies in S.S.'s testimony. For example, she stated on direct examination that respondent forced her into the basement, but responded on cross-examination that she was already in the basement using the bathroom which was, however, consistent with respondent's testimony. She also made several patently inaccurate statements. When asked when she also went to Sunday school, she answered, "today." She reported that she went to school in the afternoon and ate breakfast there. These inconsistencies relate to relatively minor points; her testimony relating to the essential details of the incident remained consistent. It is well established that once a finding of competency has been made subsequent confusion or contradiction in the testimony goes only to the credibility of the witness, not his or her competency. *People v. McNichols* (1986), 139 Ill. App. 3d 947, 952, 487 N.E.2d 1252; *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 493, 434 N.E.2d 395.

Respondent further argues that S.S. did not demonstrate any independent recollection of the events but was simply parroting what adults had told her to say. He points out that the witness testified that her mother and older sister had told her to use particular words and phrases and that it was admitted that the assistant State's Attorney and the victims' assistant had demonstrated to the witness at least six times what had been done to her. This, too, did not affect competency, but only the weight to be given the evidence by the trial court as the trier of fact. See *People v. McNichols* (1986), 139 Ill. App. 3d 947, 952-53, 487 N.E.2d 1252; *cf. People v. Willson* (1948), 401 Ill. 68, 78-79, 81 N.E.2d 485.

Respondent complains that the witness did not verbally answer approximately two-thirds of the questions put to her at the competency hearing and on the stand but responded primarily by nodding or shaking her head. In *People v. Epps* (1986), 143 Ill. App. 3d 636, 493 N.E.2d 378, we upheld the trial court's finding that a six-year-old witness was competent to testify. He occasionally gave no response to a question or responded by nodding his head, although after the State's Attorney told him he would have to say yes or no, he gave verbal answers to "virtually" all questions put to him. (143 Ill. App. 3d 636, 638, 493 N.E.2d 378.) The ability to vocalize responses to questions, however, is only one factor in the competency determination. The inability of a five-year-old child to verbalize answers to questions put to her by strangers in an intimidating setting such as a courtroom does

not automatically render the witness incompetent. The witness in *Epps* knew his first and last names, with whom he lived, the school he attended, and his past and present teachers. He could recite the alphabet and count to 16. He knew the difference between telling the truth and lying. He did not know what day it was, the number of days in a week or the number of weeks in a month. 143 Ill. App. 3d 636, 638, 493 N.E.2d 378.

■ Similarly, in the instant case, the witness knew her first and last names, with whom she lived, the names of her sisters, and her age. She could count to 13. She knew that she was in kindergarten and could identify colors and some cartoon characters. She stated that with a "lie you get in trouble" and "if you tell the truth you don't get in trouble." She could vocalize answers to most questions which could not be answered yes or no. We conclude that the court did not abuse its discretion in finding the witness competent.

■ As to respondent's second issue, we agree with respondent that our recent opinion in *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596, resolves the second issue in part. In *Salas*, we held that section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10) prohibits the introduction into evidence of detailed testimony which corroborates the testimony of a victim of a sex crime by relating details of the offense. Section 115—10 states:

> "In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:
>
> (1) testimony by such child that he or she complained of such an act to another; and
>
> (2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.)

In *Salas*, we held that such corroboration must be limited to the fact that a complaint was made and must not include specific details of the offense. (*People v. Salas* (1985), 138 Ill. App. 3d 48, 54, 485 N.E.2d 596.) In this regard, the statute simply codifies the preexisting common law rule. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068, 469 N.E.2d 1137; see *People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25.) In the instant case, complainant's mother testified that her daughter complained to her that she had been sexually assaulted. While this was clearly admissible under the statute and the common

law rule, the mother was also permitted to testify, over objection, about details of the alleged assault. Admission of this testimony was error.

The State apparently concedes that the instant case is covered by *Salas*, arguing instead that we reconsider our ruling in that case. We think *Salas* was correctly decided and decline to overrule it.

*Salas* relied on two other appellate cases: *In re R.D.* (1985), 131 Ill. App. 3d 612, 476 N.E.2d 62, and *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137. The State argues that the *Leamons* court erred by ignoring the plain language of section 115—10 and going directly to the legislative history of the act to determine the legislative intent. The court did quote the following statement by the bill's sponsor:

> "It provides that, in a prosecution for a sexual act on a child under the age of 18, the child may testify that he or she complained of such act, and the person who heard the complaint may testify that it was made, in order to corroborate the child's testimony. In other words, the person who corroborates the testimony does not talk about the act itself. All he talks about is the fact that the child, in fact, did make the complaint, and that would be using corroboration of the child's testimony." 127 Ill. App. 3d 1056, 1068, 469 N.E.2d 1137.

It is a basic axiom of statutory construction that the plain language of a statute should be given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475-76, 433 N.E.2d 674.) If the language of a statute is unambiguous, there is no reason to examine extrinsic sources such as the legislative debates. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174.) Contrary to the State's assertion, however, the plain language of the statute supports the *Leamons* court's conclusion. Section 115—10 makes admissible "testimony by the person to whom the child complained *that such complaint was made* in order to corroborate the child's testimony." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 115—10(2).) The State urges us to focus on the word "corroborate" and argues that in order to corroborate the child's testimony, the additional evidence must relate some details of the complaint. However, section 115—10(2) must be read in light of section 115—10(1), which admits only testimony by the child that he or she complained. The only testimony referred to in the statute is the fact of the complaint. Thus, section 115—10(2) restricts corroboration to the fact "that such complaint was made." The language of the statute unambiguously supports the interpretation given it in *Leamons* and adopted by this court in *Salas*. Permitting the child's mother to tes-

tify concerning details of S.S.'s complaint was error.

■■ It remains to be resolved whether, as the State argues, the error was harmless. In *Salas*, where the trial court permitted a police officer to testify regarding details of the child's complaint, the defendant might well have been prejudiced by the repeated recitation of details of the offense to the jury. There was no substantial medical or other evidence, and virtually the only evidence was the child's testimony and the officer's repetition of it. Based on these facts, we found reversible error. (*People v. Salas* (1985), 138 Ill. App. 3d 48, 54-56, 485 N.E.2d 596; see also *People v. Andino* (1981), 99 Ill. App. 3d 952, 957, 425 N.E.2d 1333.) The facts of the present case, however, are not similar to those of *Salas*, and we conclude that the admission of S.S.'s mother's testimony of the details of the alleged acts of respondent was harmless beyond a reasonable doubt. See *People v. McNichols* (1986), 139 Ill. App. 3d 947, 955, 487 N.E.2d 1252.

First, we observe that *Salas* involved a jury trial whereas in the present case the factual determination was made by a judge. Further, the record discloses the fact that the trial court showed a special awareness and concern for the fact that the complaining witness was a young child who had limited communication skills. To be sure, the testimony of a five-year-old is to be carefully scrutinized. But we cannot say that S.S. failed to demonstrate sufficient intelligence or ability to recollect so as to hold that the court below abused its discretion.

While S.S.'s facility with terminology was limited, it is apparent that she was describing incidents of penis insertion into her vagina, mouth and anus; hand contact with her vaginal and breast area; and mouth contact with her vaginal area and mouth. Further, broad and extensive cross-examination did not confuse her or otherwise result in her impeachment. While she was not able to demonstrate a temporal awareness of times, days, date, and holidays, this failing did not appear to limit her description of what happened to her during the incident in question.

By way of further contrast with *Salas*, here S.S.'s testimony was corroborated; after each testimonial description of an act, S.S. was able to reenact her testimony accurately by manipulating anatomically correct dolls. Further, the evidence disclosed the prompt complaint to baby-sitter Tillman of several of the acts charged to respondent. Respondent's own description corroborates many details of S.S.'s allegations such ás: that they lay against one another on the basement floor at the same time as the alleged occurrence; that they made physical contact, although he only would say his penis was on her stomach and denied all her other allegations; and that he ran out of the basement

whereafter she came out of the basement, as confirmed by baby-sitter Tillman.

S.S.'s demeanor at the time of her complaint was described by Tillman as crying, which would be consistent with having been sexually victimized and inconsistent with her having been the aggressor. Respondent's explanation to Officer Cram of what happened was even more corroborative of S.S.'s version than was respondent's court testimony, where he denied much of the officer's recitation of what he had told the officer on July 6, 1985. There is also the testimony of the examining physician, who confirmed a redness in S.S.'s vaginal area which, he testified, could have been caused by a penis, friction or an infection.

In *Salas*, by contrast, this court observed that the State presented no evidence to corroborate the testimony of the complaining witness. Also, in *Salas* there was a specific instruction to the jury that the evidence of the details of the complaint could be used for purposes of corroboration. *People v. Salas* (1985), 138 Ill. App. 3d 48, 55, 485 N.E.2d 596.

Further, in contrast to *Salas*, here there was extensive corroborative evidence in addition to S.S.'s cogent testimony sufficient to permit the court to conclude that the acts of which respondent was accused actually occurred beyond a reasonable doubt. At best, the testimony of S.S.'s mother regarding the details S.S. recited to her was cumulative of S.S.'s own testimony and the fact of S.S.'s complaint to Tillman and the police. (See *People v. McNichols* (1986), 139 Ill. App. 3d 947, 955, 487 N.E.2d 1252.) We conclude that the error in admitting into evidence the details of the complaining witness' complaint to her mother was harmless error beyond a reasonable doubt. *People v. Powell* (1985), 138 Ill. App. 3d 150, 158-59, 485 N.E.2d 560, 564; *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 150, 481 N.E.2d 883, 887.

We affirm the judgment of the circuit court of Lake County.

Affirmed.

REINHARD and WOODWARD, JJ., concur.